IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

ERNESTO GONZALES, et al.,

                              Plaintiff,                    Case No. 3:13 CV 796

       -vs-

                                            MEMORANDUM   OPINION

CITY OF FOSTORIA, et al.,

                            Defendant.

KATZ, J.

      Ernesto Gonzales, Angelica Hernandez, and Minor Child X have filed a civil rights action pursuant to 42 U.S.C. § 1983 against the City of Fostoria, Ohio, the Fostoria Police Department, and the following individuals:  Detective Matthew Armstrong, Officer Cory Brian, Officer Lucas Elchert, Officer Adam Nelson, Detective Charles Boyer, Detective Gabriel Wedge, Police Chief Charles Horn, Officer Brandon Bell, Officer Dustin Nowak, and Officer Justin Nowak.[1]  The plaintiffs alleged that the defendants violated their civil rights under multiple constitutional amendments.  The plaintiffs also alleged state-law claims of assault and battery, and intentional infliction of emotional distress.

**I.  Jurisdiction and Venue**

      The Court finds that it has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.  The Court also finds that venue is properly before this Court.  *See* 28 U.S.C. § 1391; N.D. Ohio R. 3.8.

---

[1]

 In their complaint, the plaintiffs misspelled Officer Elchert's last name as "Eichert" and Officer Brian's last name as "Bryan."  The plaintiffs also misidentified Officer Brian as "Brian Cory."

## II.  Facts

The plaintiffs filed their complaint on April 10, 2013.  The City of Fostoria, Ohio and its police department, along with defendants Brian, Elchert, Nelson, Bell, Wedge, and Armstrong (collectively referred to as the Fostoria defendants), subsequently moved to dismiss the complaint on June 11, 2013, for failure to state a claim upon which relief can be granted pursuant to Federal Rule Civil Procedure 12(b)(6).  Instead of filing a response to the motion to dismiss, the plaintiffs filed a motion to amend their complaint.  The Court stayed the motion to amend the complaint on August 19, 2013, until the Court ruled upon the Fostoria defendants' pending motion to dismiss. The plaintiffs filed their response to the motion to dismiss on August 27, 2013, and the Fostoria defendants filed their reply on September 13, 2013.  Therefore, the issues are ready for adjudication.

Because the Fostoria defendants moved to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6), the Court accepts as true all well-pleaded allegations in the complaint. *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 845 (6th Cir. 2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although courts are typically limited to the pleadings when faced with a Rule 12(b)(6) motion, this Court may take judicial notice of other court proceedings without converting the motion to dismiss into one for summary judgment.  *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th 2010).  The Fostoria defendants have filed certain state court documents with their motion to dismiss.  Therefore, these documents do not convert the motion to dismiss into one for summary judgment.  *Id*.  However,

2

regarding certain issues in this case, the Fostoria defendants did file a document outside the pleadings that does not involve other court proceedings.  With respect to these issues, which will be subsequently discussed, the motion to dismiss must be construed as a motion for summary judgment.  *See Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008).

The facts, as set forth in plaintiffs' complaint, establish that on April 17, 2012, the plaintiffs were having dinner in their residence.  Pursuant to a search warrant issued by the Seneca County (Ohio) Common Pleas Court, defendants Armstrong, Brian, and Wedge approached the plaintiffs' residence.  While outside the residence, Armstrong, Brian, and Wedge ignited explosive devises.  Because the warrant waived the state statutory pre-condition for non-consensual entry, Armstrong, Brian, and Wedge entered the residence without notifying the plaintiffs that they were the police.

Upon entering the residence, the family dog was shot several times.  Gonzales, who was unarmed, grabbed the minor child and proceeded into another room.  While Gonzales shielded the minor with his body, Brian allegedly fired a 12-gauge shotgun at Gonzales's head.  The bullets were stopped by a divider that separated the living room with the kitchen where the plaintiffs were located.

The plaintiffs were subsequently held at gunpoint while a search of the residence was conducted.  The officers retrieved gun shell casings from the bullets that were fired during the search of residence.  The police also seized Gonzales's computer and software which he used with his work.  As a result of the search, the plaintiffs' residence sustained damage.  The plaintiffs state that their dog suffered extensive wounds and ultimately died of its injuries.  Gonzales has been unable to find employment, the minor child suffers from post-traumatic stress disorder, and the

3

plaintiffs no longer feel safe in their residence.  Finally, the plaintiffs state that the defendants, in addition to Armstrong, Brian, and Wedge, were either instrumental in the planning or execution of the search, assisted in the inventory of the seized property, or assisted in the cover-up of the previously described events.

### III.  42 U.S.C. § 1983

To state a cause of action pursuant to § 1983, "a plaintiff must allege the deprivation of a right secured by the United States Constitution or a federal statute by a person who was acting under color of state law."  *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 971 (6th Cir. 2004) (internal quotation marks and citation omitted).  The Fostoria defendants request that the plaintiffs' § 1983 claim be dismissed because § 1983 "does not confer substantive rights but merely provides a means to vindicate rights conferred by the Constitution or laws of the United States."  *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010).  However, the plaintiffs state in their complaint that all the defendants violated their rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.  Because the plaintiffs are alleging that several of their constitutional rights were violated, their use of § 1983 as the mechanism to vindicate their rights is proper.  The Fostoria defendants' motion to dismiss plaintiffs' § 1983 allegation because the statute does not confer a substantive right is denied.

### IV.  Eighth Amendment

The plaintiffs state that Brian fired his weapon at Gonzales and the minor child, neither of whom had a weapon.[2]  The plaintiffs state that the use of the weapon was unnecessary and

---

[2]

 The plaintiffs state a "John Doe police officer" fired his weapon at Gonzales and the minor child. (Docket No. 1, ¶ 55, p. 7 of 10).  However, the plaintiffs identified that officer as Brian earlier and later in their complaint.  (Docket No. 1, ¶¶ 28 and 69–70, pp. 5 and 8 of 10).

4

excessive force, violating their Eighth Amendment rights to be free from cruel and unusual

punishment.  The plaintiffs state that Gonzales and the minor child could have been killed as a

result of Brian's actions.  In addition, the plaintiffs state that they were injured by the event

because the minor suffers from post-traumatic stress disorder, while Gonzales was afraid for his

life and the life of the minor.

As the *Aldini* court noted:

"In addressing an excessive force claim brought under § 1983, analysis begins by
identifying the specific constitutional right allegedly infringed by the challenged
application of force." *Graham v. Connor,* 490 U.S. 386, 394, 109 S. Ct. 1865, 104
L. Ed. 2d 443 (1989).  "[T]he two primary sources of constitutional protection
against physically abusive governmental conduct" are the Fourth and Eighth
Amendments.  *Id.*  The Fourth Amendment's prohibition against unreasonable
seizures of the person applies to excessive-force claims that "arise[ ] in the context
of an arrest or investigatory stop of a free citizen," *id.,* while the Eighth
Amendment's ban on cruel and unusual punishment applies to excessive-force
claims brought by convicted criminals serving their sentences.  *See Whitley v.
Albers,* 475 U.S. 312, 318–322, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986).  When
neither the Fourth nor the Eighth Amendment serves to protect citizens, courts have
applied the Fourteenth Amendment.  *Lanman v. Hinson,* 529 F.3d 673, 680–81 (6th
Cir. 2008).

The Supreme Court has deliberately left undecided the question of "whether
the Fourth Amendment continues to provide protection against deliberate use of
excessive force beyond the point at which arrest ends and pretrial detention
begins." *Graham*, 490 U.S. at 395 n.10, 109 S. Ct. 1865.  A circuit split has
emerged from this legal "twilight zone," *Wilson v. Spain,* 209 F.3d 713, 715 (8th
Cir. 2000), with courts choosing between the Fourth Amendment and the
Fourteenth Amendment to protect those arrested without a warrant between the
time of arrest and arraignment.  The standards of liability for these causes of action
vary widely, *see Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) ("A
substantially higher hurdle must be surpassed to make a showing of excessive force
under the Fourteenth Amendment than under the 'objective reasonableness' test of
[the Fourth Amendment] . . . ."), and which amendment applies depends on the
status of the plaintiff at the time of the incident, whether free citizen, convicted
prisoner, or something in between.  *See Gravely v. Madden,* 142 F.3d 345, 348–49
(6th Cir. 1998).

As we noted in *Phelps* [*v. Coy*, 286 F.3d 295 (6th Cir. 2002)], if the plaintiff
was a free person at the time of the incident and the use of force occurred in the
course of an arrest or other seizure of the plaintiff, the plaintiff's claim is governed

5

by the Fourth Amendment's reasonableness standard. 286 F.3d at 299–300 (citing *Graham,* 490 U.S. at 395, 109 S. Ct. 1865). That standard requires that an officer's use of force be objectively reasonable, balancing the cost to the individual against the government's interests in effecting the seizure, and entails "deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Id.* (citing *Katz,* 533 U.S. at 204–05, 121 S. Ct. 2151). The officer's subjective intentions are irrelevant to the Fourth Amendment inquiry. *Id.* (citing *Graham,* 490 U.S. at 397, 109 S. Ct. 1865).

On the other hand, if a plaintiff is in a situation where his rights are not governed by either the Fourth or the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment protects the individual against physical abuse by officials. *Darrah*, 255 F.3d at 305–06. Specifically, "[i]t is clear . . . that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham,* 490 U.S. at 395 n.10, 109 S. Ct. 1865. According to the Supreme Court, a pre-trial detainee is one who "has had only a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest.'" *Bell v. Wolfish,* 441 U.S. 520, 536, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) (citing *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975)).

*Id*. at 864–65 (footnotes omitted).

Although the plaintiffs seek to raise an Eighth Amendment cruel and unusual punishment claim, *Aldini* establishes that the plaintiffs do not have a cause of action under the Eighth Amendment. *Aldini* explains that the status of the plaintiff at the time of the incident in question, whether a free citizen, convicted prisoner, or something in between, determines which constitutional amendment, Fourth, Eighth, or Fourteenth, is applicable. *Id*. at 864–65. In this case, the plaintiffs were in their residence as free citizens when the incident occurred. The Eighth Amendment bans cruel and unusual punishment to excessive-force claims brought by convicted criminals who are serving their sentences. *Id*. at 864. Because the plaintiffs where not convicted criminals serving a sentence at the time of the search, the Eighth Amendment does not provide them a cause of action. Therefore, the plaintiffs' Eighth Amendment claim is dismissed for failure to state a claim upon which relief can be granted.

### V.  Fourth and Fourteenth Amendment Claims

The plaintiffs assert that the killing of the family dog; the shooting at Gonzales and the

minor child; the search of the residence; the seizure of property; the minor's post-traumatic stress

disorder; and the damage to the residence that resulted in the execution of the warrant violated

their Fourth and Fourteenth Amendment rights. The plaintiffs fail to allege whether they are

asserting a substantive claim for relief under the Fourteenth Amendment, or whether they are

referring to the Fourteenth Amendment because the Fourth Amendment is applicable to the states

through the Fourteenth Amendment.

To the extent that the plaintiffs are referring to the Fourteenth Amendment for substantive

due process concepts, such relief is not available when another provision of the Constitution

"directly addresses the type of illegal government conduct alleged by the plaintiff."  *Warren v.*

*City of Athens,* 411 F.3d 697, 706–07 (6th Cir. 2005).  Therefore, the plaintiffs' illegal search and

excessive force claims must be analyzed under the Fourth Amendment.

### A.  Death of Dog and the Shooting at Gonzales and Minor Child

The plaintiffs state that Brian was the defendant that discharged his firearm in their

residence, killing the family dog.  They also state that Brian attempted to kill Gonzales and the

minor child by taking "a 12 guage [sic] shot gun, aimed it at . . . Gonzales and  . . . Minor Child X

and attempted to shoot them in the head with the shot gun."  (Docket No. 1, ¶ 28, p. 5 of 10).

In the motion to dismiss, Brian filed an affidavit, dated June 11, 2013.  (Docket No. 32-3,

pp. 1–2 of 2).  In his affidavit, Brian contradicts plaintiffs' allegations.  Brian states that during the

execution of the search warrant, he did not carry a 12-gauge shotgun; that he did not discharge the

firearm which he possessed during the operation of the search; that he did not shoot and kill the

7

family dog; that he did not use his firearm in a threatening way towards any occupant of the house with the intent to harm or frighten; and that he did not attempt to shoot Gonzales or the minor child.  In their opposition to the motion to dismiss, the plaintiffs failed to file any document contesting Brian's affidavit.

Because Brian's affidavit was filed outside the pleadings, the motion to dismiss under Rule 12(b)(6) as it applies to Brian converts to a motion for summary judgment pursuant to Federal Rule Civil Procedure 56(a).  *See Winget*, 537 F.3d at 576.  This Court may not consider Brian's affidavit unless the parties have been given a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  *Id*. (internal quotation marks and citations omitted).  The plaintiffs have been given such an opportunity.

The motion to dismiss, which contains Brian's affidavit, was filed on June 11, 2013.  Over two months later, on August 27, 2013, the plaintiffs filed their opposition to the motion to dismiss. Despite being fully aware of the existence of the affidavit and being represented by counsel, the plaintiffs chose not to contradict the affidavit with other evidence.  To date, over six months after the filing of the Brian affidavit, the plaintiffs have not contradicted the statements in the affidavit with appropriate evidence.  Therefore, because the plaintiffs have been given a reasonable opportunity to present evidence to contradict the Brian affidavit and have failed to do so, pursuant to *Winget*, the Court will consider Brian's motion to dismiss for failure to state a claim as a motion for summary judgment.  *Id*.

Summary judgment is proper where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting a genuine issue of material fact must support his argument either by "citing to particular

8

parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Court views the facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The Court does not weigh the evidence or determines the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The party requesting summary judgment bears an initial burden of demonstrating that no genuine issue of material fact exists, which the party must discharge by producing evidence to demonstrate the absence of a genuine issue of material fact or "by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986) (internal quotation marks omitted). If the moving party satisfies this burden, the nonmoving party may not "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir. 2009) (citing Fed. R. Civ. P. 56; *Matsushita,* 475 U.S. at 586). The party opposing the summary judgment motion must present sufficient probative evidence supporting its claim that disputes over material facts remain; evidence that is "merely colorable" or "not significantly probative" is insufficient. *Anderson,* 477 U.S. at 248–52.

In his affidavit, Brian denies the numerous allegations made against him by the plaintiffs. His denials are not disputed by the plaintiffs. The plaintiffs, as the nonmoving party, have rested their allegations against Brian on their pleadings, a procedure which they are prohibited from doing in order to avoid summary judgment. *Moldowa*n, 579 F.3d at 374. The plaintiffs have

failed to produce any probative evidence supporting their allegations and demonstrating that disputes of material fact exist. *Anderson*, 477 U.S. at 248–52.  Because Brian's affidavit establishes that he did not engage in the acts alleged by the plaintiffs and because the plaintiffs have failed to satisfy their burden of demonstrating that issues of material fact exist, *id*., Brian is entitled to summary judgment as a matter of law on these claims.

### B. Validity of Search Warrant

The plaintiffs allege that the search warrant used to enter their residence and to seize their property was "illegal" and "was so lacking in indicia of probably cause as to render the Defendants belief in its existence entirely unreasonable." (Docket No. 1, ¶¶ 17 and 18, p. 4 of 10). The plaintiffs assert that defendant Armstrong made statements in his application for the search warrant that were not true and made subsequent statements that were not in the affidavit "in order to justify the illegal search and seizure." (Docket No. 1, ¶¶ 20 and 21, p. 5 of 10).  In their motion to dismiss, the Fostoria defendants filed a May 2, 2013, decision from the Fostoria Municipal Court. (Docket No. 32-2, p. 1 of 11).  The decision concerned Gonzales's second motion to suppress evidence.  In his decision, Judge Mark E. Repp addressed Gonzales's arguments regarding the propriety of the information received from confidential informants, the scope of the search in light of Armstrong's affidavit, and the validity of the search of the residence for evidence of drug trafficking.  After addressing each issue, Judge Repp denied the motion to suppress. (Docket No. 32-2, p. 11 of 11).

The Court takes judicial notice of the municipal court's docket sheets which establish that Gonzales pleaded no contest and was subsequently found guilty of charges stemming from the search of his residence.  The docket sheets also establish that Gonzales has appealed the trial

court's guilty verdicts.  The Court recognizes that Judge Repp's decision and the municipal court's docket sheets do not convert the motion to dismiss to a motion for summary judgment. *Buck*, 597 F.3d at 816.

The Court dismisses this Fourth Amendment claim, only as to Gonzales, under *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck,* the Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486–87 (footnote and internal citation omitted).  The Supreme Court explained that "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed."  *Id.* at 487.  Because a finding of a Fourth Amendment violation would necessarily imply the invalidity of Gonzales's convictions, the *Heck* doctrine bars Gonzales's Fourth Amendment claims regarding the search warrant.  However, because Gonzales has appealed his convictions, this claim must be dismissed without prejudice.  *See Callihan v. Schneider*, 178 F.3d 800, 804 (6th Cir. 1999).

The Court recognizes that in Ohio, "an illegal arrest does not invalidate a subsequent conviction which is otherwise proper."  *State v. Rutland,* 786 N.E.2d 530, 533 (Ohio Ct. App. 2003) (quoting *State v. Henderson,* 554 N.E.2d 104, 106 (Ohio 1990)).  However, in cases such as this, a finding of a Fourth Amendment violation would invalidate Gonzales's convictions because the search of the residence uncovered the evidence that was used to obtain the convictions.  *Cf. Graves v. Mahoning Cnty.*, Nos. 11-4409, 12-3047, 2013 WL 4105653, at *5 (6th Cir. Aug. 15,

11

2013). In addition, unlike *Graves*, the seizure of evidence in this case is in dispute as established by the state court suppression decision.

Regarding the Fourth Amendment claim as to Hernandez and the minor child, the Court also dismisses the claim, but for reasons other than those applicable to Gonzales. Because the record does not indicate that Hernandez and the minor child were convicted of any criminal activity related to the search warrant, the *Heck* doctrine does not apply to them. *Heck*, 512 U.S. 486–87.

In cases involving search warrants, a law enforcement officer may be held liable under § 1983 for an illegal search when the officer "knowingly and deliberately, or with a reckless disregard for the truth" makes "false statements or omissions that create a falsehood" and "such statements or omissions are material or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000) (internal quotation marks and citation omitted) (cited with approval by *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003)). In order to establish such a claim, there must be: "(1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Vakilian*, 335 F.3d at 517.

To survive the Fostoria defendants' motion to dismiss for failure to state a claim, Hernandez and the minor child must allege sufficient facts that, accepted as true, state a claim that is plausible on its face. *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In their complaint, Hernandez and the minor child have not identified any false statements contained in the

12

application for the search warrant. In addition, they fail to identify how the alleged false

information was material to the state court judge's finding of probable cause. Because their

complaint fails to plead facts that allows this Court to draw reasonable inferences as to what

statements by Armstrong in the warrant were false and how the unidentified false statements led to

a finding of probable cause, the Court finds that Hernandez and the minor child have failed to

meet their burden under *Twombly*, *Iqbal*, and *Vakilian*. Therefore, Hernandez's and the minor

child's Fourth Amendment allegations regarding the search warrant are dismissed with prejudice.

### C. Confinement During Search

Plaintiffs state that Brian, Armstrong, and Wedge held them at gunpoint while their

residence was searched. The allegation does not state a cause of action. The Sixth Circuit stated

in *Marcilis v. Twp. of Redford*, 693 F.3d 589, 599 (6th Cir. 2012), that:

> Supreme Court precedent, *Michigan v. Summers,* 452 U.S. 692, 702–03, 101 S. Ct.
> 2587, 69 L. Ed. 2d 340 (1981) (footnote omitted), recognizes the dangers inherent
> in narcotics-related searches:
>
> > [T]he execution of a warrant to search for narcotics is the kind of
> > transaction that may give rise to sudden violence or frantic efforts to
> > conceal or destroy evidence. The risk of harm to both the police and
> > the occupants is minimized if the officers routinely exercise
> > unquestioned command of the situation.
>
> Likewise, our Circuit has made clear that officers conducting residential searches
> may detain individuals in handcuffs and display firearms where the officers have a
> justifiable fear of personal safety. *See, e.g., Ingram v. City of Columbus,* 185 F.3d
> 579, 591–92 (6th Cir. 1999).

Thus, under the jurisprudence of the Sixth Circuit, the fact that the plaintiffs were held at

gunpoint while their residence was searched is not a constitutional violation. *Marcilis,* 693 F.3d at

599. The officers could have reasonably believed that their conduct was a lawful means of

exercising command over the search of the residence. *Id.* The warrant authorized the officers to

search for weapons and drugs. Given the purpose of the search, and the risks involved in a drug raid, a reasonable officer would have been justifiably concerned with his safety and could have believed that the level of force used against the plaintiffs was lawful. *Id*. Accordingly, plaintiffs' allegations concerning a Fourth Amendment violation because they were secured at gunpoint during the search of the residence is dismissed.

### D. Unidentified Injury

Paragraph forty-five of the complaint states: "Plaintiff was injured by said illegal search and seizure." (Docket No. 1, ¶ 45, p. 6 of 10). As previously explained, a plaintiff must plead facts that will allow this Court to draw reasonable inferences that the Fostoria defendants are liable for the alleged misconduct. *Iqbal,* 556 U.S. at 678. The plaintiffs fail to identify which plaintiff is the subject of the allegation or the injury sustained. Because the plaintiffs have failed to plead such facts as to allow this Court to understand which plaintiff was injured, which defendant or defendants caused the injury, and the nature of the injury sustained, the plaintiffs have failed to satisfy their burden under *Iqbal*. Therefore, this claim is dismissed pursuant to Rule 12(b)(6).

### E. Post-traumatic Stress Disorder

The minor child contends that she suffers from post-traumatic stress disorder. As with paragraph forty-five of the complaint, the minor child does not identify which event or events, or which defendant or defendants, may have caused the disorder. (Docket No. 1, ¶ 46, p. 6 of 10). Under *Iqbal*, this failure to give the Court sufficient information to allow the Court to determine liability is enough to dismiss the claim. *See Iqbal,* 556 U.S. at 678.

14

Assuming for the sake of argument that the disorder was a result of (1) the search of the residence, (2) allegedly being shot at, and/or (3) being held at gunpoint while the residence was searched, the claim must still be dismissed.  As the Court has found, the plaintiffs have failed to establish that the search of the residence, made pursuant to a search warrant, was improper.  Brian's uncontested affidavit establishes that he did not shoot at the minor child.  Thus, this alleged conduct could not have caused the disorder.  Finally, the use of guns to secure the plaintiffs also fails because *Marcilis* establishes that being held at gunpoint while police search a residence is not a constitutional violation.  *Marcilis,* 693 F.3d at 599.  Accordingly, the minor child's post-traumatic stress disorder claim is dismissed pursuant to Rule 12(b)(6).

### F.  Physical Damage to House

Plaintiffs state that their residence suffered physical damage due to bullet and buck shot holes.  This allegation must also be dismissed.  Plaintiffs state that only Brian discharged his firearm during the search of the residence.  The first discharge allegedly occurred when Brian shot the dog.  The second discharge concerns Brian's alleged use of a 12-gauge shotgun in an attempt to shoot Gonzales and the minor child.  However, Brian's affidavit states that he did not discharge his firearm during the search, that he did not shoot the family dog, that he was not in possession of a shotgun during the search, and that he did not discharge any shotgun in an attempt to hit Gonzales and the minor child.  The plaintiffs did not oppose Brian's statements made in his affidavit.  Because plaintiffs' complaint alleges that only Brian discharged his firearm, the alleged bullet holes and buck shot holes could not exist in the house because Brian's uncontested affidavit establishes that he never discharged any weapon.  Plaintiffs' allegations regarding the bullet holes in their house do not allow this Court to draw reasonable inferences that any defendant other than

15

Brian was liable for damaging their residence. *Iqbal,* 556 U.S. at 678.  Because Brian's affidavit establishes that as the only alleged shooter he did not discharge his gun, the Court must dismiss this claim.

### G.  Seizure of Property and Taking of Property Without Compensation

The plaintiffs state that they were never compensated for property that was seized from their residence.  (Docket No. 1, ¶ 48, p. 7 of 10).  They state that Armstrong, Brian, and Wedge "illegally seized evidence not listed in the search warrant."  (Docket No. 1, ¶ 33, p. 6 of 10).  The plaintiffs do not identify the specific property in this allegation.  However, in paragraphs thirty-three, forty-nine, fifty, eighty-three, eighty-four, and eighty-five of the complaint, the plaintiffs refer to Gonzales's laptop computer, intellectual property contained in the computer, damage to the house, and the loss of the family dog.  Regarding the alleged illegal seizure of the laptop computer and the intellectual property contained in the computer, the search warrant specifically allows for the seizure of "[a]ny computers" and "computer discs."  Therefore, the seizure of Gonzales's laptop computer, which also contained the intellectual property, was authorized by the warrant.

Regarding the unidentified property that was allegedly seized, the plaintiffs are under an obligation to allege sufficient facts.  *Twombly,* 550 U.S. at 570.  The failure to identify the property that was not specifically mentioned in the complaint fails to satisfy this obligation.  Therefore, the allegation that unidentified property was illegally seized is dismissed for failure to allege sufficient facts.  *Id.*

The Court notes that although the plaintiffs characterize the seizure of the laptop computer and unidentified property, along with the intellectual property contained on the computer, under

16

the Fourth Amendment (Docket No. 1, ¶¶ 48–51, p. 7 of 10), the seizure of the property should have been alleged as a Fifth Amendment violation.  It appears that the plaintiffs may have attempted to bring a Fifth Amendment claim in their Sixth Cause of Action.  (Docket No. 1, ¶¶ 81–86, p. 9 of 10).  However, the plaintiffs fail to cite the source of this claim.  Because the taking of property without just compensation is a Fifth Amendment cause of action, the Court will construe the Sixth Cause of Action as being brought under the Fifth Amendment.

The Court notes that the Fifth Amendment does not prohibit the taking of property.  Rather, the amendment prohibits the taking of property without just compensation.  *Hensley v. City of Columbus,* 557 F.3d 693, 695 (6th Cir. 2009) (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 194 (1985)).  "Thus, even after a taking, the government has not violated the Constitution until it refuses to compensate the owner."  *Id.* at 695–96 (citing *Williamson,* 473 U.S. at 194–95 & n. 13).  "[I]f a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."  *Williamson*, 473 U.S. at 195.

This Court cannot entertain a "taking" claim until the plaintiffs show that they sought compensation through the applicable government procedures and that they received a final decision from the relevant government entity.  *Hensley,* 557 F.3d at 696.  There is no assertion that plaintiffs attempted to use relevant procedures to facilitate the return of the computer and intellectual property, or for compensation for the property damage to their residence and the loss of the dog.  They have also failed to allege that no relevant procedures are available for compensation regarding these items, or that they were denied just compensation after using the

relevant government procedures.  *Id*.  Accordingly, these claims are dismissed pursuant to Rule 12(b)(6).

### H. Removal of Shell Casings

The plaintiffs object to the removal of alleged shell casings at their residence.  (Docket No. 1, ¶ 32, p. 5 of 10).  The plaintiffs do not refer to the shell casings in their causes of action.  Any claim regarding the shell casings must fail for several reasons.  First, the plaintiffs alleged that only Brian discharged his gun during the incident.  Brian's uncontested affidavit establishes that he did not discharge his firearm during the search of the residence.  Because of Brian's affidavit, under the facts alleged in the complaint, there could be no shell casings at the residence that could have been retrieved.

Second, plaintiffs have not established a property interest in any shell casings.  Accepting for argument that a firearm or firearms were discharged during the search, the shell casings would be the property of the Fostoria defendants, not the plaintiffs.  The casings would have come from police bullets and the bullets would have been the property of the police department.  Therefore, the plaintiffs have failed to allege any property interest in the shell casings belonging to the defendants.

Finally, if the plaintiffs believe that they have a property interest in the shell casings, the proper procedure, as explained in *Williamson* and *Hensley*, is for the plaintiffs to first seek compensation from the state.  Because there is no allegation that the plaintiffs attempted to use relevant state procedures to seek the return of the casings, that they were denied compensation after using the relevant procedures, or that no relevant procedures were available regarding the casings, any claim regarding the casings is dismissed.  *Hensley,* 557 F.3d at 696.

18

## VI.  City of Fostoria

The plaintiffs have also sued the City of Fostoria, Ohio and the Fostoria Police Department, as a division of the city, regarding the search of their home.  A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).  "A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following:  (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).  A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell,* 436 U.S. at 694.  The plaintiffs fail to allege that the actions of the individual defendants were pursuant to a municipal policy or custom.  Because such an allegation was not made in their complaint, the plaintiffs failed to state a claim under § 1983 against the city and the police department.  Accordingly, plaintiffs' complaint against the city and police department is dismissed pursuant to Rule 12(b)(6).

## VII.  Defendants Elchert, Nelson, Bell

Plaintiffs fail to state how defendants Elchert, Nelson, and Bell were involved in the search of their home.  The plaintiffs' failure to specify the involvement and participation of Elchert, Nelson, and Bell in the search alone is sufficient to dismiss the complaint against them because the Court is unable to draw any reasonable inferences that these defendants violated the plaintiffs' constitutional rights. *Iqbal,* 556 U.S. at 678.

19

The Court notes that as a general rule, a police officer's mere presence at the scene of a search, without a showing of direct responsibility for the action, will not subject the officer to liability. *Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984). Without any specific facts regarding the involvement of Elchert, Nelson, and Bell in the search of the residence, the Court must presume that these defendants were merely present at the scene of the search. If this is the case, *Ghandi* directs that Elchert, Nelson, and Bell are not liable for any constitutional violation.

If the Court assumes that the defendants engaged in the same conduct as Armstrong, Brian, and Wedge, who are specifically identified in the complaint, the plaintiffs' complaint still fails to establish a constitutional violation for the same reasons previously explained in this decision. The Court notes that Elchert, Nelson, and Bell are not alleged by the plaintiffs to have obtained the warrant as this allegation is specifically directed to Armstrong. This same assumption also applies to the discharge of the firearm which the plaintiffs attribute exclusively to Brian. If the plaintiffs are seeking to impose liability upon a theory that Elchert, Nelson, and Bell have supervisory authority, such liability may occur only if the actions of the officers who conducted the search were unconstitutional. *See Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998). As previously discussed, the plaintiffs have not established any constitutional violation during the search of their residence. Therefore, because the complaint fails to establish that Elchert, Nelson, and Bell have violated the plaintiffs' constitutional rights, the complaint as to these defendants is dismissed pursuant to Rule 12(b)(6).

## VIII.  State Tort Claims

The plaintiffs raise the state-law claims of assault and battery, and infliction of emotional distress.  (Docket No. 1, ¶¶ 7, 68–80, pp. 4, 8–9 of 10).  Although not raised as a separate claim, nor specifically alleged anywhere else in the complaint, the plaintiffs mention a state claim of conspiracy.  (Docket No. 1, ¶ 7, p. 4 of 10).  Because it is mentioned in paragraph seven of the complaint, the Court will construe the complaint as raising a state claim of conspiracy.

Twenty-eight U.S.C. § 1367(c)(3) allows this Court to decline to exercise supplemental jurisdiction over state-law claims if this Court "has dismissed all claims over which it has original jurisdiction . . . ."  Although this Court has dismissed all of plaintiffs' federal claims for the various reasons stated in this decision against the Fostoria defendants, the Court will hold in abeyance a ruling on the Fostoria defendants' motion to dismiss the plaintiffs' state-law claims. The reason that these claims are being held in abeyance is because this ruling dismisses only some, but not all of the defendants.  As some of plaintiffs' federal claims still exist in this case, it would be premature for the Court to decide at this time whether it will use its discretion and decline to exercise supplemental jurisdiction over the state-law claims.  *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 849 (6th Cir. 2012).

## IX.  Motion to Amend Complaint

The next issue for the Court to address is plaintiffs' pending motion to amend their complaint.  After the Fostoria defendants filed their motion to dismiss on June 11, 2013, the plaintiffs did not file a response to the motion.  Rather, the plaintiffs chose to move to amend their complaint on July 6, 2013.  The motion was held in abeyance pursuant to this Court's order of August 19, 2013, until the Court ruled upon the motion to dismiss.

21

Federal Rule Civil Procedure 15(a)(2) provides that a court may freely grant leave to amend a pleading when justice so requires, in order to ensure that a case is tried on its merits "rather than [on] the technicalities of the pleadings."  *Moore v. City of Paducah,* 790 F.2d 557, 559 (6th Cir. 1986).  "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.,* 427 F.3d 996, 1001 (6th Cir. 2005).

Upon careful review of the proposed amended complaint, the motion to amend is denied. The Court finds that the amended complaint could have been filed much sooner and that the amendment at this stage of the litigation would prejudice the defendants.  The original complaint was filed on April 10, 2013, nearly a year after the incident in question.  The plaintiffs did not move to amend their complaint until after the Fostoria defendants had filed their motion to dismiss.  In comparing the proposed amended complaint with the Fostoria defendants' motion to dismiss, it is apparent that the plaintiffs are attempting to correct the deficiencies in their pleadings in order to overcome the defendants' motion to dismiss.  With the exception of naming an additional defendant and the abandoning of their Eighth Amendment claim, the amended complaint is essentially the original complaint with additional language in order to try to avoid dismissal.  Given that the proposed amendment could have easily been filed prior to the motion to dismiss, the Court finds undue delay in filing the proposed amendment and that the delay has been prejudicial to all the defendants.

The amendment also gives a lack of notice to all the defendants for several reasons.  First, with regards to the shooting of the dog, the plaintiffs originally alleged that only Brian shot the dog.  In addition, the defendants alleged that only Brian used a shotgun to shoot at Gonzales and

the minor child.  When Brian filed his affidavit denying these allegations, the plaintiffs did not contest the affidavit, entitling Brian to summary judgment.  In the amended complaint, the plaintiffs change their story.  They now claim that Armstrong, Brian, and Officer Don Dennis shot the dog.  Dennis was not named as a defendant in the original complaint.  This allegation is prejudicial to Armstrong, Brian, and Dennis.  By failing to object to Brian's affidavit, the plaintiffs accepted Brian's version of the facts.  As to Brian, his affidavit establishes that he did not kill the dog and the amended complaint to the contrary would prejudice Brian who established a previously uncontested lack of liability on this claim.

Armstrong and Dennis are prejudiced by the amendment because the original complaint explicitly stated that the shooting was exclusively done by Brian.  Based upon the original complaint, Armstrong and Dennis were completely unaware that they would be accused of shooting the dog given plaintiffs' prior allegations and failure to object to Brian's affidavit.

This same analysis applies to the alleged shooting of Gonzales and the minor child by Dennis.  The plaintiffs originally alleged that only Brian discharged a shotgun towards Gonzales and the minor child.  Brian's affidavit contradicted the claim and plaintiffs did not contest Brian's denial.  The plaintiffs now seek to change their story and serve Dennis.  In seeking to add Dennis as a defendant well over a year after the incident, Dennis is not only prejudiced by the delay in being notified of the allegation, but lacked any notice until the proposed amendment that he would be a party to this action.

The amended complaint does allege specific facts as to Elchert, Nelson, and Bell.  The allegations are that these defendants were present at the residence and engaged in the search of the home.  However, the clarified allegations still do not establish a cause of action regarding these

23

defendants for the same reasons that the plaintiffs have failed to established a cause of action regarding the other individual defendants.

Finally, and most importantly, the amendment is futile. Although the plaintiffs abandoned their Eighth Amendment claim, the Court has already explained that the Eighth Amendment is not applicable to the plaintiffs because they were not incarcerated at the time of the incident. The plaintiffs continue to challenge the validity of the search warrant. Although the amended complaint now identifies the portions of the search warrant application the plaintiffs feel are false, the amendment does not negate the fact that Gonzales's claim is barred by *Heck*. With regards to Hernandez and the minor child, the amended complaint does not satisfy the factors required by *Vakilian*.

The amended complaint again alleges the fact that the plaintiffs were held at gunpoint during the search of the residence. However, *Marcilis* establishes that the alleged procedures used by the defendants were constitutional.

Plaintiffs have also clarified that they are relying on the Fourteenth Amendment on the theory that the Fourth Amendment is applicable to the states through the Fourteenth Amendment. The amendment, although helpful in clarifying that the plaintiffs are not relying on the Fourteenth Amendment's substantive due process concepts, still does not save the plaintiffs' Fourth Amendment allegations from dismissal.

The plaintiffs have recognized that their taking allegation was not properly alleged under the Fourth Amendment, and should have been raised under the Fifth Amendment. They have also specified the items that they feel were improperly taken — the dog, the laptop computer, the intellectual property contained on the computer, and the damage to the house. Even though the

plaintiffs have now relied on the correct constitutional amendment for their taking claim and have been specific regarding the items taken, this Court's decision explains why the deprivation of property claim still fails under *Hensley*.

The plaintiffs continue to complain about the removal of the shell casings from the residence.  Again, the Court's decision explains why the removal of the casings does not establish a constitutional violation.

Plaintiffs assert that the City of Fostoria is liable for the actions of Armstrong, asserting the required elements announced in *Monell* and *Burgess*.  However, because plaintiffs' original allegations against Armstrong do not establish that Armstrong engaged in unconstitutional conduct, the amendment attempting to impose liability on the city also fails.

Plaintiffs' amended complaint clarifies that the individual defendants are sued in their individual capacities.  However, this clarification does not overcome the previously stated reasons regarding the dismissal of plaintiffs' constitutional claims against the individual Fostoria defendants.

## X.  Defendants Boyer, Horn, Dustin Nowak, and Justin Nowak

Defendants Boyer, Horn, Dustin Nowak, and Justin Nowak have filed a response opposing the plaintiffs' motion to amend the complaint for the same reasons as those stated by the Fostoria defendants.  For the reasons stated in Section IX of this opinion, the motion to amend the complaint is also denied as to Boyer, Horn, Dustin Nowak, and Justin Nowak.  Because Boyer, Horn, Dustin Nowak, and Justin Nowak have not filed a motion to dismiss or for summary judgment, the case shall proceed in normal course as to these individuals.

## XI.  Conclusion

The motion to dismiss for failure to state a claim filed by the City of Fostoria, Ohio, the City of Fostoria Police Department, Elchert, Nelson, Bell, Wedge, and Armstrong is granted as to the plaintiffs' federal claims.  (Doc. No. 32).  Brian's motion to dismiss, construed as a motion for summary judgment, is granted as to plaintiffs' federal claims. (Doc. No. 32).  The motion to dismiss plaintiffs' state law claims of assault and battery, infliction of emotional distress, and conspiracy against the City of Fostoria, Ohio, the City of Fostoria Police Department, Brian, Elchert, Nelson, Bell, Wedge, and Armstrong is held in abeyance.  Plaintiffs' motion to amend their complaint is denied as to all defendants. (Doc. No. 38).

IT IS SO ORDERED.

    S/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE